IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SWISSMARINE SERVICES, S.A., | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:19-CV-1143-RP |
| XCOAL ENERGY AND RESOURCES, | § § § | |
| Defendant. | § § | |

**ORDER**

Before the Court is Plaintiff Swissmarine Services, SA's ("Swissmarine") Verified Complaint with Request for Issue of Process of Maritime Attachment and Garnishment. (Dkt. 1). For the reasons discussed below, the Court grants Swissmarine's request to issue writs of maritime attachment and garnishment to PNC Bank, National Association and Glencore Ltd. (collectively, "Garnishees"), and orders that a process server for those writs is appointed.

**I. BACKGROUND**

Swissmarine alleges the following facts in its complaint. (Dkt. 1). Swissmarine, a Swiss corporation, charters bulk carrier vessels. (*Id.* at 2). Defendant XCoal Energy and Resources ("XCoal"), an American corporation, chartered Swissmarine vessels "to transport coal from various ports throughout the world, including in the United States, to XCoal's customers." (*Id.*). Their contracts "required that XCoal pay charter hire and for demurrage and other expenses associated" with chartering the vessels. (*Id.*). According to Swissmarine, XCoal "failed and refused" to pay a total of $1,359.833.27. (*Id.* at 3).

Now, Swissmarine "demands security for arbitration proceedings, proceeding in the United States." (*Id.* at 1). It seeks $1,631,799.92, 125% of the amount it claims XCoal owes ($1,359,833.27), as that security. (*Id.* at 3). It asks the Court to issue writs of attachment and garnishment up to that

1

sum to Garnishees, that "are entities with offices or agents located in this District which . . . Swissmarine reasonably believes hold accounts which are the property of and/or owing to XCoal." (*Id.* at 2, 4). Swissmarine then asks for "this action to be stayed and the amount to await final award in the Arbitration and judgment entered on such award by this Court." (*Id.* at 4).

Relatedly, Swissmarine also requests that the Court appoint a process server to serve the writs on Garnishees. (*Id.* at 4; Dkt. 7).

## II.  LEGAL STANDARD

Supplemental Admiralty and Maritime Claims Rule B(1)[1] "allows a district court to take jurisdiction over a defendant in an admiralty or maritime action by attaching property of the defendant." *Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V.*, 817 F.3d 241, 244 (5th Cir. 2016) (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 421 (5th Cir. 2001)). The purposes of this power are "to secure a respondent's appearance and to assure satisfaction in case the suit is successful." *Id.* (quoting *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 693 (1950)). "A Rule B maritime attachment is a remedy available only under a court's admiralty jurisdiction." *Alphamate Commodity GMBH v. CHS Europe SA*, 627 F.3d 183, 186 (5th Cir. 2010) (citing Fed. R. Civ. P. 9(h); Fed. R. Civ. P. Supp. R. A(1)(A)).  So, "[i]f the underlying dispute or claim does not fall within admiralty jurisdiction, the court lacks the authority to issue the Rule B attachment." *Id.*

"Neither Rule B nor any other of the Supplemental Rules create[s] 'a valid prima facie admiralty claim.'" *Id.* (quoting *Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.*, 478 F. Supp. 2d 532, 536 (S.D.N.Y. 2007)). "Rather, the Supplemental Rules fashion procedures by which a valid

---

[1] "If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process." Fed. R. Civ. P. Supp. R. B(1)(a).

maritime claim may form the basis for a writ of maritime attachment." *Id.* (quoting *Sonito Shipping*, 478 F. Supp. 2d at 536).

Generally, a party seeking a writ of maritime attachment and garnishment must show "four prerequisites":

> (1) an *in personam* claim against the defendant which is cognizable in admiralty;
> (2) the defendant cannot be found within the district in which the action is commenced;
> (3) property belonging to the defendant is present or will soon be present in the district; and
> (4) there is no statutory or general maritime law prohibition to the attachment.

2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 21:3 (6th ed. Nov. 2019 update) (citing *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008)). After review of the plaintiff's complaint and affidavit, "if the conditions of this Rule B appear to exist," the court must "enter an order so stating and authorizing process of attachment and garnishment." Fed. R. Civ. P. Supp. R. B(1)(b); *see also Heidmar, Inc. v Anomina Ravennate Di Armanento Sp.A. of Ravenna*, 132 F.3d 264, 267 (5th Cir. 1998). The standard of proof to which Rule B subjects an attachment-seeking plaintiff is thus permissive: at this stage, it need not prove its claims by a preponderance of the evidence or to a similar standard, but rather present sworn factual assertions satisfying the four prerequisites. *Compare, e.g.*, *Jensen v. Rollinger*, No. SA:13-CV-1095-DAE (W.D. Tex. filed Dec. 10, 2013) (Order, Dkt. 3, at 5) (presenting plaintiff's allegations and "determining the conditions of Rule B appear[ed] to exist[]"), *with* 2 Schoenbaum, *supra*, at § 21:3 (for contesting Rule B attachment, "[t]he standard of proof is 'preponderance of the evidence'"). Even so, "[t]he facts must be plausible on their face, and the identification of the attached or garnished property should be clearly and unequivocally stated." 2 Schoenbaum, *supra*, at § 21:3.

### III.  ANALYSIS

#### 1. *In Personam* Claim Cognizable in Admiralty

The question of whether a plaintiff has asserted an *in personam* claim cognizable in admiralty is largely a "jurisdictional one": the Court asks if "minimum contacts" exist. 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 21:3 (6th ed. Nov. 2019 update) (citing *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)). In other words, is the defendant's "activity within the district at the time of [the plaintiff's] injury" sufficient to establish jurisdiction? *LaBanca v. Ostermunchner*, 664 F.2d 65, 67 (5th Cir. Unit B 1981). However, this issue is not dispositive: "the remedy of maritime attachment is constitutionally sound and provides a jurisdictional basis for an action in admiralty despite the absence of minimum contacts." 2 Schoenbaum, *supra*, at § 21:3 (citing *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1090 (N.D. Cal. 2002)). The Court also must ensure that the plaintiff's claims "sound in admiralty" by "look[ing] to whether the 'principal objective' of the claimed contract or dealings is 'maritime commerce.'" *Equatorial Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhad*, 591 F.3d 1208, 1210 (9th Cir. 2010) (quoting *Norfolk S. Ry. v. Kirby*, 543 U.S. 14, 25 (2004)).

Here, Swissmarine does not allege specific facts pointing to XCoal's (as opposed to Garnishees') minimum contacts with the Western District of Texas. (Compl., Dkt. 1). But "[u]nder the attachment rules, whether [the defendant] has ever been physically present or domiciled in the forum state is immaterial." *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1090 (N.D. Cal. 2002). And Swissmarine alleges many facts satisfying the requirement that its claims primarily concern maritime commerce. (*See* Compl., Dkt. 1, at 2–3). Thus, the Court finds that this condition appears to exist.

### 2. Defendant Cannot Be Found in this District

"The second and more crucial inquiry is whether the defendant is present within the district for service of process." 2 Schoenbaum, *supra*, at § 21:3. "[T]he determination of whether the defendant can be found within the district must be made before attachment is ordered." *Heidmar, Inc. v Anomina Ravennate Di Armanento Sp.A. of Ravenna*, 132 F.3d 264, 267–68 (5th Cir. 1998). If the defendant is in fact present at the time the plaintiff files for the attachment, attachment is invalid.

According to Swissmarine's complaint and affidavit, XCoal "cannot be found in this District within the meaning of Supplemental Rule B." (Compl., Dkt. 1, at 2, 6). Consequently, this condition appears to exist, warranting attachment. *See Heidmar*, 132 F.3d at 267.

### 3. Property Belonging to Defendant

Rule B authorizes attachment of "the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process," Fed. R. Civ. P. Supp. R. B(1)(a), so long as it is "within the territorial reach of the district court," 2 Schoenbaum, *supra*, at § 21:3. "The property attached need not have any relationship with the claim sued upon but the defendant must have an interest in the property involved," and "[a]ny right or title to property will be sufficient." *Id.* (citing *Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V.*, 817 F.3d 241, 244 (5th Cir. 2016)).

Here, Swissmarine alleges that it believes XCoal has, "or will have during the pendency of this action, property and/or assets in this jurisdiction consisting of cash, funds, freight, hire, and/or credits in the hands of" Garnishees. (Compl., Dkt. 1, at 3–4). Therefore, this condition appears to exist, justifying attachment.

However, Rule B caps the value of the property to be attached at "the amount sued for," Fed. R. Civ. P. Supp. R. B(1)(a)—that is, "up to the amount for which the plaintiff has a valid prima facie claim." *Peter Döhle Schiffahrts KG v. Sesa Goa Ltd.*, 642 F. Supp. 2d 216, 221 (S.D.N.Y. 2009); *see*

*also E. Asiatic Co. v. Indomar, Ltd.*, 422 F. Supp. 1335, 1341 (S.D.N.Y. 1976) (discussing this limitation and reducing a judgment to "the extent of the property subjected to the process of maritime attachment"). Swissmarine provides no information concerning its request for an additional 25% of what XCoal allegedly owes it ($271,966.65) as additional security. (*See* Compl., Dkt. 1, at 3). Typically, though, courts allow attachment amounts that exceed the actual damages claimed when the plaintiff alleges the difference is necessary to cover expenses like interest, costs, and attorney's fees. *See, e.g., Castleton Commodities Shipping Co. PTE Ltd v. HSL Shipping & Logistics NA, Inc.*, No. CV 16-6619, 2016 WL 5231844, at *1 (E.D. La. Sept. 22, 2016); *Oldendorff Carriers GmbH & Co., KG v. Grand China Shipping (Hong Kong) Co.*, No. CA C-12-074, 2013 WL 1867604, at *1 (S.D. Tex. Apr. 22, 2013). Applying the generally deferential Rule B standard of proof, the Court presumes that the additional 25% is included in "the amount sued for." Fed. R. Civ. P. Supp. R. B(1)(a).

4.  <u>No Maritime Law Prohibition</u>

Finally, the Court determines if any statutory or general prohibition exists in maritime law that would bar attachment and garnishment. 2 Schoenbaum, *supra*, at § 21:3. Swissmarine does not note any, and the Court is unaware of any, so at this stage, the "no prohibition" condition appears to exist.

## IV.  CONCLUSION

Accordingly, **IT IS ORDERED** that process of maritime attachment be issued to garnish and attach XCoal's property, held by Garnishees PNC Bank, National Association and Glencore Ltd., in the amount of **$1,631,799.92**, as security for Swissmarine's claims asserted in the parallel arbitration proceedings. (*See* Compl., Dkt. 1, at 4).

**IT IS FURTHER ORDERED** that Michael J. Smith (counsel of record for Swissmarine) or any other person appointed by him who is at least 18 years old and not a party to this action, is appointed to serve process of maritime attachment and garnishment, along with a copy of

Swissmarine's complaint, (Dkt. 1), and a copy of this order. (*See* Dkt. 7). *See* Fed. R. Civ. P. Supp. R. B(1)(d)(ii); Fed. R. Civ. P. 4(c).

**IT IS FINALLY ORDERED** that this action is **STAYED** pending the decision of the arbitrator in the parallel arbitration proceedings. Within **fourteen days** of the arbitrator's decision, Swissmarine shall apprise the Court of that decision and how it affects the proceedings in this case. However, if XCoal wishes to contest the Rule B attachment, this stay shall not preclude it from doing so and receiving a "a prompt hearing at which [Swissmarine] shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Fed. R. Civ. P. Supp. R. E(4)(f).

**SIGNED** on November 27, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE